UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| -against- | **ORDER** |
| MICHAEL MACK, | 19 Cr. 27 (PGG) |
| Defendant. | |

PAUL G. GARDEPHE, U.S.D.J.:

On August 13, 2019, Mack pled guilty to conspiracy to distribute and possess with intent to distribute 280 grams and more of crack cocaine. (PSR at 1, ¶¶ 2, 4)

On December 4, 2019 this Court varied from the Sentencing Guidelines range of 87 to 108 months' imprisonment, and sentenced Mack to three years' imprisonment, to run concurrently with any sentence imposed on Mack in connection with his violation of state parole. (See Judgment (Dkt. No. 55) at 2; Sentencing Tr. (Dkt. No. 57) at 3, 22)

Mack is currently being held at the Metropolitan Correctional Center in New York ("MCC"), awaiting transfer to Federal Correctional Institution-Coleman Low. (Def. Br. (Dkt. No. 64) at 5-6)  The Bureau of Prisons ("BOP") has calculated Mack's release date – assuming good time credit – as August 23, 2021. (Def. May 8, 2020 Ltr. (Dkt. No. 73))

On March 30, 2020, Mack submitted a request to the BOP for a sentence reduction pursuant to 18 U.S.C. § 3582. BOP has not responded to that request.[1] (Def. Br. (Dkt. No. 64) at 7; Taylor Decl, Ex. A (Dkt. No. 66))

---

[1] Mack submitted follow-up requests to BOP on April 2, 2020, April 13, 2020, April 16, 2020, and April 22, 2020, renewing his Section 3582 request and, in the alternative, requesting that his transfer to FCI-Coleman Low be expedited, or that he be temporarily released to home confinement pursuant to 18 U.S.C. § 3622. (Taylor Decl., Exs. B-E (Dkt. No. 66))  BOP has not responded to any of these letters. (Id. ¶ 7) On April 22, 2020, this Court directed BOP to

On April 27, 2020, Mack filed a motion seeking compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), given his "underlying conditions, including severe obesity, hypertension and diabetes," and the "[inadequate] protocol for inmates at MCC" to address COVID-19.  (Def. Br. (Dkt. No. 64) at 9, 16)  Mack seeks "a modification of [his] sentence to time served followed by seven and a half years of supervised release, with a condition of home confinement for a period of time equal to the undischarged portion of his current sentence of imprisonment . . . ."  (Id. at 23)

The Government opposes Mack's application, arguing that "he presents a serious risk of recidivism," and that "there is simply not enough information to assess whether [release to his uncle's residence] would sufficiently protect Mack or the public from a medical perspective any better than if he remained at the MCC, or whether it is otherwise a suitable environment for Mack given the Court's and the Government's serious concerns about recidivism."  The Government argues that "it is not clear whether Mack would be able to appropriately social distance at the residence, whether there are others who live at or frequent the residence . . . ."  (Apr. 30, 2020 Govt. Ltr. (Dkt. No. 69) at 3)

In a May 5, 2020 reply letter, Mack describes the residence where he would live during home confinement, the uncle who owns and resides in the apartment, and proposed precautions against spreading COVID-19.  (May 5, 2020 Def. Ltr. (Dkt. No. 71) at 2)

For the reasons stated below, Mack's application will be denied.

---

provide Mack's counsel, Zachary Taylor, with Mack's medical records.  (Dkt. No. 62)  BOP provided the records before Mack filed the instant motion on April 27, 2020.  (Taylor Decl. (Dkt. No. 66) ¶ 8)

## DISCUSSION

### I. LEGAL STANDARD

The compassionate release statute – 18 U.S.C. § 3582(c)(1)(A)(i) – provides that a court may

> upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf . . . , reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction. . . .

18 U.S.C. § 3582(c)(1)(A)(i).

Pursuant to the statute, a defendant seeking compassionate release must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or "30 days [must have lapsed] from the receipt of such a request by the warden of the defendant's facility."  18 U.S.C. § 3582(c)(1)(A).

A court considering an application for compassionate release must weigh the sentencing factors set forth in 18 U.S.C. § 3553(a); determine whether there are "extraordinary and compelling reasons [that] warrant such a reduction"; and consider whether a sentencing "reduction is consistent with applicable policy statements issued by the Sentencing Commission."  (Id.)

### II. ANALYSIS

#### A. Exhaustion of Administrative Remedies

Because thirty days have passed since BOP received Mack's March 30, 2020 compassionate release request, his motion is not barred by a failure to exhaust administrative remedies.  See id.

3

**B.      Section 3553(a) Factors**

18 U.S.C. § 3553(a) directs a sentencing court to consider

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B) to afford adequate deterrence to criminal conduct;

   (C) to protect the public from further crimes of the defendant; and

   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for –

   (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .

(5) any pertinent policy statement—

   (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28) . . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

In the Presentence Report, the Probation Department recommended a variance down to 48 months' imprisonment from the Guidelines Range of 87 to 108 months'

imprisonment. The recommended variance was based on the Defendant's age – then 26 – the fact that he sold drugs to support his own drug habit, a concern that "Mack may have some underlying mental health [issues]," and a belief that Mack "has a support system in the form of his mother, who has indicated that he can reside with her upon his release." (PSR at 18-19)

At sentencing, the Government sought a "substantial sentence of incarceration." (Sentencing Tr. (Dkt. No. 57) at 15)

Defense counsel argued for a variance down to 24 months' imprisonment. (Id. at 5) The premise for the variance argument was that, until sentencing, Mack had been "in the custody of the state of New York. Since he was arrested in January of this year on a New York state warrant, New York [S]tate is the primary custodian." (Id.) Defense counsel argued that Mack would not get credit towards his federal sentence for the time he had spent in federal custody – from January 24, 2019 to December 4, 2019.[2] (Id. at 12) Defense counsel asked the Court to "take that into account" in imposing sentence. (Id. at 13)

The Court carefully considered the Section 3553(a) factors at sentencing. As to the aggravating factors, the Court noted that Mack had distributed "an enormous amount of crack cocaine in the vicinity of West 112th Street and Lenox Avenue in Manhattan"; that he and his co-defendant had made nineteen separate sales of crack cocaine to an undercover officer; that Mack had a 2013 conviction for criminal possession of a weapon in the second degree, and a 2017 conviction for criminal sale of a controlled substance in the third degree; and that he was on parole for that offense when he committed the instant offense. Given the

---

[2] Defense counsel's reference to January 24, 2019 was an error. Mack was brought from New York state custody into federal custody on February 14, 2019, pursuant to a writ. (Dkt. No. 11; PSR (Dkt. No. 50) at 1)

circumstances, the Court concluded that "the risk of recidivism appears very high." (Id. at 15, 17-18)

As to mitigating factors, the Court noted, inter alia, the Defendant's age, upbringing, drug addiction, mental health issues, and medical condition, including his high blood pressure and diabetes. (Id. at 15-17)

In granting a variance down to three years, the Court gave substantial weight to defense counsel's argument that Mack would not receive credit for the nearly ten months that he had spent in custody at the MCC:

> I've also taken into account defense counsel's argument that Mr. Mack may well receive no credit against his federal sentence for the time that he has been in [the MCC]. . . . I . . . want to make clear that my sentence of 36 months or three years has factored in defense counsel's argument that Mr. Mack won't receive credit for the ten months that he has been in [the MCC]. There is uncertainty about how that matter will be treated. There is uncertainty about whether Mr. Mack faces an additional term of imprisonment in the state as a result of his parole violation. So I've taken those matters into account in deciding that 36 months is the appropriate sentence in this case.

(Id. at 19, 22)

The Court's concern that Mack would not receive credit for the ten months he had been in custody at the MCC has proven unfounded. Mack – who was sentenced on December 4, 2019 to three years' imprisonment – has a BOP release date of August 23, 2021. (Dkt. No. 73) Accordingly, Mack appears to have been credited for much if not all of the time he spent at the MCC.

Analysis of the Section 3553(a) factors counsels against granting Mack's application for compassionate release. Given the circumstances of his offense, his criminal record, the fact that he committed his offense while on parole, and his Guidelines range of 87 to 108 months' imprisonment, the three-year sentence imposed by the Court was extremely lenient. Moreover, because BOP credited Mack for the ten months he had spent at the MCC, the actual

6

time that Mack will serve in federal custody is much less than what the Court and the parties expected.

      C.    **"Extraordinary and Compelling Reasons"**

In order to prevail on his compassionate release motion, Mack must demonstrate that "extraordinary and compelling reasons warrant . . . a reduction" in his sentence, and that any reduction that is granted comports with "applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

Congress tasked the Sentencing Commission with providing guidance to courts regarding the application of the compassionate release statute. See 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. . . ."); United States v. Ebbers, No. (S4) 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020); see also United States v. Hernandez, No. 18 Cr. 834 (PAE), Dkt. No. 451.

The Commission's policy statement and commentary concerning Section 3582(c)(1)(A) state that a court may reduce a sentence for "extraordinary and compelling reasons," including where the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13(1)(A) & cmt. n.1(A).

Finally, a defendant seeking compassionate release must demonstrate that his release will not present a danger to the community. U.S.S.G. § 1B1.13(2)-(3).

Here, Mack – who is 26 years old – argues that he should be released from prison because "his underlying medical conditions, which include severe obesity, hypertension and diabetes, [create] the very real possibility that exposure to the novel coronavirus will kill him in prison." (Def. Br. (Dkt. No. 64) at 21)

The Government acknowledges that Mack "suffers from several medical conditions that increase his risk of contracting and/or suffering from COVID-19, notwithstanding his young age," and "appreciates that several inmates and staff have tested positive for the virus, and that Mack is housed together with other 'high risk' inmates." (Apr. 30, 2020 Govt. Ltr. (Dkt. No. 69) at 3) However, the Government contends that

> there is simply not enough information to assess whether [Mack residing with his uncle] would sufficiently protect Mack or the public from a medical perspective any better than if he remained at the MCC, or whether it is otherwise a suitable environment for Mack given the Court's and the Government's serious concerns about recidivism. By way of example, it is not clear whether Mack would be able to appropriately social[ly] distance at the residence, whether there are others who live at or frequent the residence, whether the medical facilities nearby can appropriately care for Mack on a timely basis, or how Mack would otherwise support his needs for food and other basic necessities. Nor does Mack otherwise propose or discuss any additional terms governing his proposed supervised release that will be vital to help him start and maintain a law-abiding life.

(Id. at 3-4)

There is no question that COVID-19 presents an enormous risk to inmates. See United States v. Stephens, 2020 WL 1295155, at *2 (citing United States v. Raihan, No. 20-cr-68 (BMC) (JO), Dkt. No. 20 at 10:12–19 (E.D.N.Y. Mar. 12, 2020)). And Mack has demonstrated that he suffers from medical conditions that put him at special risk. Individuals with "severe obesity (body mass index . . . of 40 or higher)" and diabetes are "at high-risk for severe illness from COVID-19." High-Risk Conditions, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/hcp/underlying-conditions.html (last accessed May 13, 2020). Moreover, for those who contract COVID-19, a history of

8

hypertension has been associated with "increased illness severity and adverse outcomes." Interim Clinical Guidance for Management of Patients with Confirmed Coronavirus Disease (COVID-19), Centers for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html (last accessed May 13, 2020).

Mack has also explained how he will socially distance if he is granted release. Mack's uncle owns the two-family brownstone and lives alone in the top apartment, which has a separate entrance from the ground-level apartment. The apartment has three bedrooms, a kitchen, a living room, and a bathroom, and Mack would sleep in an unused bedroom. Mack's uncle is employed, is in good health, and is able to provide Mack with food and other necessities. The apartment is near an urgent care facility. Mack would isolate from his uncle for two weeks following his release, and the uncle would frequently sanitize the kitchen, bathroom, and high-traffic surfaces during these two weeks and beyond. (May 5, 2020 Def. Ltr. (Dkt. No. 71) at 2)

Mack's medical condition and conditions at the MCC must, however, be balanced against the "very high risk of recidivism" that the Court cited at sentencing. As discussed above, a defendant seeking compassionate release must demonstrate that his release will not present a danger to the community. U.S.S.G. § 1B1.13(2)-(3). This Court cannot make such a finding here. Mack has not been amenable to community supervision in the past, and there is no reason to believe that he will remain law abiding after serving only five months of the sentence imposed by this Court on December 4, 2019. Home confinement cannot ensure that Mack will not return to selling drugs. To the contrary, Mack's prior weapon and drug convictions, his sale of substantial quantities of crack cocaine in connection with the instant offense, and his commission of the instant offense while on parole demonstrate that he is a danger to the community. The risk

of danger to the community has not been ameliorated by the five months' incarceration Mack has served since sentencing, nor has it been eliminated by virtue of the COVID-19 pandemic.

## CONCLUSION

Although the COVID-19 pandemic is an extraordinary event that presents a clear and present danger to both inmates in prison and our society as a whole, the Court finds that Defendant Mack does not meet the legal standard for compassionate release. Accordingly, his application for compassionate release is denied. Given the still evolving nature of this health crisis, however, and the challenges it poses to prison facilities, see Federal Defenders of New York, Inc. v. Federal Bureau of Prisons, No. 19-1778, slip op. at 26-27 (2d Cir. Mar. 20, 2020), his motion is denied without prejudice to renewal in the event that circumstances materially change.

Dated:  New York, New York
        May 13, 2020

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge