# TAYLOR & COHEN LLP

305 Broadway, 7th Floor
New York, NY 10007
Tel (212) 257-1900
Fax (646) 808-0966
www.taylorcohenllp.com

March 29, 2021

*By ECF*

The Honorable Paul G. Gardephe
United States District Court
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

**Re:** *U.S. v. Michael Mack*, **19 CR 27 (PGG)**

Dear Judge Gardephe:

      I am writing to respectfully renew Michael Mack's April 27, 2020 motion for compassionate release under 18 U.S.C. § 3582(c) (*see* ECF Doc. Nos. 63, 64 & 66) (the "Motion"), and request that he be released to home confinement to serve the remaining six months of his sentence, which terminates on September 24, 2021 according to the Bureau of Prisons ("BOP"). When the Motion was filed, Mr. Mack was incarcerated at MCC – New York (the "MCC"). It is my understanding that Mr. Mack will soon be released from the MCC to a halfway house, the Bronx Community Residential Reentry Center (the "RRC"). We now respectfully request that this Court reconsider Mr. Mack's Motion and release him to home confinement at his uncle's house in the Bronx in place of the RRC.

      Mr. Mack was arrested on a state warrant on January 24, 2019 and received into federal custody pursuant to a writ on February 14, 2019. (*See* ECF Doc. No. 11; PSR ¶ 16). On August 13, 2019, Mr. Mack pled guilty to conspiracy to distribute and possess with intent to distribute 280 grams and more of crack cocaine in violation of 21 U.S.C. § 841(b)(1)(C). (*See* PSR ¶ 4). At Mr. Mack's sentencing on December 4, 2019, the Court varied from the Sentencing Guidelines range of 87 to 108 months' imprisonment, and sentenced Mack to three years' imprisonment, to run concurrently with any sentence imposed on Mr. Mack in connection with his violation of state parole. (*See* ECF Doc. No. 55 at 2; Sentencing Tr. (ECF Doc. No. 57) at 3, 22).

      By Order dated May 14, 2020, the Court denied the Motion. (*See* ECF Doc. No. 74). However, the Court stated that:

> Given the still evolving nature of this health crisis … and the challenges it poses to prison facilities, *see Federal Defenders of New York, Inc. v. Federal Bureau of Prisons,* No. 19-1778, slip

---

The Government will respond to Defendant Michael Mack's renewed motion for compassionate release (Dkt. No. 88) by April 8, 2021.

SO ORDERED.

*[signature: Paul G. Gardephe]*

Paul G. Gardephe
United States District Judge

Dated: April 1, 2021

March 29, 2021
Hon. Paul G. Gardephe
Page 2

> op. at 26-27 (2d Cir. Mar. 20, 2020), [Mr. Mack's] motion is denied without prejudice to renewal in the event that circumstances materially change.

(*See id.* at 10).

Mr. Mack recently informed me that he has been transferred to a quarantine unit within the MCC and will be released to the RRC in the Bronx as early as March 30, 2021. We respectfully submit that Mr. Mack's imminent release to a halfway house is a material change in circumstances warranting the modification of his sentence under 18 U.S.C. § 3582(c) to confinement at the home of Mr. Mack's uncle, Anthony Rice, until September 24, 2021, to be followed by five years of supervised release.

### **Extraordinary and Compelling Reasons Exist for Compassionate Release**

For the reasons previously stated in support of the Motion (*see* ECF Doc Nos. 64, 71), we continue to maintain that Mr. Mack has demonstrated "extraordinary and compelling" reasons warranting his immediate compassionate release.[1] "Mr. Mack has demonstrated that he suffers from medical conditions that put him at special risk" from COVID-19. (ECF Doc. No. 74 at 8). Mr. Mack has not been vaccinated. He informed me that he refused a COVID-19 vaccine at the MCC because he was concerned about side effects. He has since related to me that he is keeping an open mind about getting vaccinated after his release. Mr. Mack's hesitancy reflects widespread mistrust of vaccines in Black communities.[2] African-Americans' vaccine reluctance is a consequence of the history of racism in this country, including the notorious Tuskegee experiments, conducted by the United States Public Health Service and the Centers for Disease Control and Prevention. I

---

[1] *See United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020) (noting "district courts' discretion to consider whether any reasons are extraordinary and compelling"); *United States v. Pacheco*, No. 12-CR-408 (JMF), 2020 WL 4350257, at *1 (S.D.N.Y. July 29, 2020) ("[T]he threat of COVID-19 to those in prison constitutes an extraordinary and compelling reason for compassionate release.").

[2] *See, e.g.*, Bryan Walsh, "Axios-Ipsos Poll: The racial gap on coronavirus vaccine," Axios (Aug. 26, 2020), *available at* https://www.axios.com/axios-ipsos-poll-coronavirus-index-vaccine-racial-trust-gap-28629c26-ef99-416c-ad60-03a43d725e67.html (August 21-24, 2020 poll indicating that only 28% of African-Americans in survey said they were likely to take a first-generation COVID-19 vaccine, compared to 51% of Whites in the survey); Andrew Jacobs, "At Your Age, It's the Vaccine or the Grave," *The New York Times* (Mar. 6, 2021) (reporting that "much of the racial disparity in vaccination rates, experts say, can be tied to a longstanding mistrust of medical institutions among African-Americans).

March 29, 2021
Hon. Paul G. Gardephe
Page 3

am unaware of any effort by the BOP to counter inmates' mistrust through education concerning the benefits and safety of the COVID-19 vaccines. Thus, Mr. Mack remains at high risk from COVID-19.[3]

Mr. Mack would be significantly safer from the virus at his uncle's home, where he can practice social distancing, than at the RRC. As was reported at an earlier stage of the pandemic,

> [H]alfway houses are uniquely positioned to be vectors for the virus. Residents arrive from prisons across the country, then share rooms, bathrooms, and dining areas. Staff cycle in and out every day from the surrounding community, as do residents who are required to work.[4]

According to the BOP's website tracker, there is currently one confirmed case at the RRC, and one resident died from COVID-19.[5] By contrast, as detailed in a previous submission to the Court (*see* ECF Doc. No. 71 at 2-3), Mr. Mack's uncle owns a two-family brownstone where Mr. Mack can sleep in an unused bedroom.[6] The increased risk of exposure to the coronavirus at the RRC constitutes an extraordinary and compelling reason to grant Mr. Mack's request for compassionate release. *See United States v. White*, No. 16-CR-82 (VEC), S.D.N.Y. Jan. 25, 2021, ECF Doc. No. 284 at 2-3.

Releasing Mr. Mack to home confinement would not increase any danger to the community. Whether at the RRC or under home confinement, Mr. Mack will be permitted to enter the community for preapproved activities, including medical appointments and employment. However, under home confinement, unlike at the RRC, Mr. Mack would be subject to electronic location monitoring, which would serve as an added protection for the public. Additionally, Mr. Mack fully

---

[3] Even if he were vaccinated, Mr. Mack would remain at risk from suspected vaccine-resistant variants of the novel coronavirus, which have been widely reported in the media. *See, e.g.*, "Covid-19: The U.S. Has Its Own New Worrisome Variants," *The New York Times* (Mar. 22, 2021), *available at* https://www.nytimes.com/live /2021/02/14/world/covid-19-coronavirus.

[4] Liliana Segura, "As Coronavirus Spreads in Federal Prisons, Cases in Halfway Houses Are Being Undercounted," *The Intercept* (May 28, 2020), *available at* https://theintercept.com/2020/05/28/coronavirus-federal-prison-halfway-houses/.

[5] *See* "COVID-19 Cases," Federal Bureau of Prisons (updated Mar. 26, 2021), *available at* https://www.bop.gov/coronavirus/.

[6] I conferred with Mr. Rice, who informs me that he remains in good health and that Mr. Mack is very welcome to serve home confinement in his apartment.

March 29, 2021
Hon. Paul G. Gardephe
Page 4

understands the leniency of his original sentence, and the prospect of serving a Guidelines sentence in the event of a violation is a deterrent to reoffending.

Unlike at the time of the Court's original ruling on the Motion, the balance of the Section 3553(a) factors now weigh in favor of compassionate release to home confinement. As the Court noted in the May 14, 2020 Order, Mr. Mack received a substantial downward variance at his original sentencing and, furthermore, Mr. Mack appears to have received credit for much of the time he spent in the MCC prior to his sentencing, resulting in a shorter-than-anticipated sentence. (*See* ECF. Doc. No. 74 at 6). To date, Mr. Mack has served approximately two years and one and a half months in federal custody since he was received on a writ on February 14, 2019. The vast majority of that time was served in the MCC, as the pandemic evidently precluded Mr. Mack's transfer to his designated facility, FCI Coleman.[7] The conditions of Mr. Mack's incarceration have been extraordinarily difficult. Because of the pandemic, the MCC has been in near continual lockdown, with very limited opportunities for exercise, recreation or educational programming and no family visitation for more than a year. Nevertheless, it is counsel's understanding that during the latter stages of the ongoing lockdown Mr. Mack has been able to participate in a drug addiction treatment program and resumed studying and testing in connection with obtaining his GED.[8] In sum, while Mr. Mack has served substantially less than a Guidelines sentence, the time that he has served was much more punitive than the norm.

## Conclusion

For the foregoing reasons as well as those set forth in Mr. Mack's previous submissions, he respectfully requests that the Court modify his sentence to a period of home confinement at his uncle's home until the termination of his original sentence on September 24, 2021, to be followed by five years of supervised release. Mr. Mack further proposes that, during the period of his home confinement, he be subject to electronic location monitoring and that he be restricted to his uncle's residence at all times except for employment, education, religious services, medical

---

[7] In late February 2020, the BOP temporarily transferred Mr. Mack and other prisoners to FCI Otisville while a search was conducted for a gun that had been smuggled into the MCC.

[8] As of the writing of this letter, I have not confirmed Mr. Mack's completion of the drug addiction treatment program through a certificate or similar BOP documentation.

March 29, 2021
Hon. Paul G. Gardephe
Page 5

or mental health appointments, drug addiction treatment and other activities pre-approved by the Probation Office.[9]

Respectfully submitted,

*/s/ Zachary S. Taylor*

Zachary S. Taylor

cc:   Tara LaMorte, Esq.
      Assistant United States Attorney (*by ECF and email*)

---

[9] I reached out to the government late on Friday and, understandably, have not yet received a response concerning the government's position on Mr. Mack's renewed motion for compassionate release.